**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 25 CR 615 |
| DIONTAE HARPER;<br>MARKEEVES BROOKS;<br>DONNITA BRYANT; and<br>MICHAELA RICHARD | Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Defendants are charged with disseminating (1) a recording of a witness interview, and (2) a transcript of another witness's grand jury testimony, in violation of 18 U.S.C. § 1513(e), which makes it a crime for anyone to:

> knowingly, with the intent to retaliate, take[] *any action harmful* to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense[.]

*See id.* (emphasis added). Defendant Michaela Richard filed a motion to dismiss the charges arguing that the phrase "any action harmful" is both vague and overbroad. *See* R. 67. In a separate motion to dismiss, Richard argues that "action harmful" must be a "concrete, objective injury," which the government has failed to allege. *See* R. 84. Both motions have been adopted by Richard's three co-defendants: Diontae Harper, Markeeves Brooks, and Donnita Bryant. *See* R. 72; R. 73; R. 74; R. 86; R. 88; R. 89. Both motions are denied.

## I. Vagueness

A law "is unconstitutionally vague if it fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited or would result in arbitrary and discriminatory enforcement." *Smiley v. Jenner*, 173 F.4th 865, 871 (7th Cir. 2026). However, "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *United States v. Bonin*, 932 F.3d 523, 537 (7th Cir. 2019) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010)).

Here, the government contends in its brief that Defendants disseminated an interview recording and grand jury testimony "in order to cause [the Victims] reputational and emotional harm and to increase the risk that [the Victims] and [their] famil[ies] would face physical harm because of [their] cooperation with the government." *See* R. 79 at 31. This contention is supported by the detailed allegations in the indictment. The statute's language readily provides fair notice that this kind of conduct violates its prohibition against knowingly taking "any action harmful" to a witness or cooperator "with the intent to retaliate." 18 U.S.C. § 1513(e). And since Defendants' conduct is clearly proscribed by the statute, they cannot mount a challenge to its vagueness as applied to others. *See United States v. Hilliard*, 2024 WL 3634201, at *3 (2d Cir. Aug. 2, 2024), *cert. denied,* 145 S. Ct. 1098 (2025).

Defendants argue that the "clearly prescribed" doctrine is not applicable here because "the phrase 'action harmful' is so undefined that no one—not the defendants, not the courts, and not the government itself—can say with confidence what conduct

it prohibits." R. 87 at 3-4. According to Defendants, the "government cannot invoke the 'clearly proscribed' doctrine to avoid that question; doing so would allow the government to bootstrap its own prosecutorial theory into a finding of clarity." *Id.*

But as other courts have emphasized, the statute's well defined application to witnesses and cooperators sufficiently alleviates any potential ambiguity in the term "actional harmful." *See, e.g., United States v. Nursey*, 2015 WL 7074570, at *4 (M.D. Ala. Aug. 7, 2015), *aff'd in part*, 696 F. App'x 983 (11th Cir. 2017) ("The statute is enforceable only against individuals who knowingly retaliate against witnesses who have provided truthful information concerning actual or potential federal criminal activity. Hence, the statute sets out a standard for when a person should be prosecuted by law enforcement."); *see also United States v. Velasquez*, 772 F.2d 1348, 1357 (7th Cir. 1985) (upholding the constitutionality of § 1513(a) in part because it is "confined" to retaliation against "witnesses or informants" and thus has a "limited scope"). Where the government must prove both intent and knowledge, these dual requirements "do much to destroy any force in the argument that application of the statute would be so unfair that it must be held invalid." *United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008); *see also Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (*mens rea* alleviates any vagueness concerns). In rejecting a vagueness challenge to § 1513(e), the Sixth Circuit explained that while "the language of the statute is potentially sweeping," it is not "vague such that an ordinary person could not understand what conduct it prohibits." *United States v. Edwards*, 783 F. App'x 540, 545 (6th Cir. 2019). The fact that a defendant could engage in a number of

courses of conduct that would violate the statute is not in and of itself indicia of vagueness. *See United States v. Lanier*, 520 U.S. 259, 271 (1997) ("general statements of the law are not inherently incapable of giving fair and clear warning"); *United States v. Cueto*, 151 F.3d 620, 635 (7th Cir. 1998) ("The mere fact that a term covers a broad spectrum of conduct does not render it vague.").

So, contrary to Defendants' argument, here there is not just "some" conduct that "clearly" falls within § 1513(e). *See* R. 67 at 5 (quoting *Johnson v. United States*, 576 U.S. 591, 602 (2015)). Rather, the statute as a whole clearly prohibits several well-defined forms of conduct when taken with knowing retaliatory intent. First, subsection (e) expressly encompasses "interference with the lawful employment or livelihood." Furthermore, prior subsection (b) provides that illegal retaliation includes causing the harm of "bodily injury" or "damage [to] tangible property," as well as threats to commit harm. With that sort of conduct prohibited by subsection (b), the prohibition of subsection (e) regarding "*any* action" that is harmful also clearly encompasses causing an increase in the risk of suffering the harms expressly enumerated earlier in the statute (i.e., bodily injury, damage to property, interference with employment). *See* § 1513(e) (emphasis added). Such an increase in risk is what the government argues the allegations amount to here. In the context of a statute that criminalizes retaliation against witnesses and cooperators, "any action" that increases the risk of a physical injury or property loss is nearly as coercive to witnesses or cooperators as the bodily or property injuries themselves. And for that reason, "any action" that increases such risk is clearly prohibited by the statute.

Defendants argue that this reasoning does not address their contention that the term "action harmful" lacks sufficient definition, and so "fundamentally misapprehends" their argument that that statute is unconstitutionally vague. *See* R. 87 at 4. According to Defendants, a "scienter requirement narrows the class of defendants to those who act with a particular mental state, but it does nothing to define the prohibited conduct." *Id.*

Putting aside the fact that this argument is contrary to holdings of the Supreme Court and appellate courts cited above, the argument also ignores the fact that a "knowing" intent to "retaliate" inherently involves the defendant's *belief* that they are taking action to harm the government cooperator. That's what it means to "retaliate." And generally, evidence that a defendant intended to retaliate by committing an action the defendant believed to be harmful to the cooperator, is strong evidence that the action is in fact harmful.

Furthermore, it is not unusual for the law to criminalize action that causes an increase in the risk of bodily harm or property damage to another person. Attempted murder and attempted robbery are criminal actions because of the increase in the risk that the victim would actually be murdered or robbed, even though the defendant did not in fact cause a murder or robbery. Similar to murder and theft criminal statutes, here § 1513(b) expressly prohibits retaliating by causing bodily harm or property damage. And similar to criminal attempt statutes, § 1513(e) criminalizes "any action" taken with the intent to increase the risk that others might cause such harm. This is because action that increases risk of harm is "action harmful" in and of

5

itself even if the ultimate harm (i.e., murder, assault, theft) never comes to fruition. Thus, contrary to Defendants' argument, the conduct prohibited by § 1513(e) is well-defined and clear.

## II. Overbreadth

Just as § 1513(e) is saved from a vagueness challenge by the limitation of its scope to intentional retaliatory conduct against government cooperators and witnesses, so does that limitation save it from overbreadth. Several appellate and district courts have reached this conclusion. *See Hilliard*, 2024 WL 3634201 at *3 ("The witness retaliation statute can be validly applied to all manner of non-speech retaliatory conduct: from physical violence, to harm to a witness's property, to firing a witness from a job. It can also be validly applied to various forms of unprotected speech, such as reckless true threats."); *Edwards*, 2020 WL 9607176 at *3 (holding that § 1513 is legitimately applicable "to a number of types of unprotected speech, including true threats, incitements, defamatory statements, and statements integral to criminal conduct"); *Velasquez*, 772 F.2d at 1357 (§ 1513 is not a "prohibition of threats generally and hence does not exploit the ambiguity of such words as threat, intimidate, and coerce"); *see also Calimlim*, 538 F.3d at 712 (holding that because of the scienter requirement of the federal forced labor statute "any speech involved must be a threat or else intended to achieve an end prohibited by law. To the extent that [the forced labor statute] raises First Amendment concerns, the scienter requirement limits the prohibited speech to unprotected speech."); *Brown*, 2016 WL 4136765, at *2 (considering Section 1513(e) "in its entirety," it "is not unconstitutionally

6

overbroad"); *cf. United States v. Burke*, 2022 WL 1970189, at \*39 (N.D. Ill. June 6, 2022) (finding Illinois bribery statute that criminalized "any act" was not vague or overbroad because the "legislature included a scienter requirement").

Moreover, Defendants' alleged "speech"—i.e., disseminating information with the intent that other people would harm the victims—is not protected by the First Amendment. The Second Circuit has explained that furthering and carrying "out a course of intentional retaliation against" witnesses falls "comfortably within the category of unprotected speech integral to criminal conduct." *See Hilliard*, 2024 WL 3634201 at \*3; *cf. United States v. Gonzalez*, 905 F.3d 165, 191 n.10 (3d Cir. 2018) (cyberstalking statute "is not targeted at 'speech or to conduct necessarily associated with speech,' but with harassing and intimidating conduct that is unprotected by the First Amendment."). More specifically, Defendants' dissemination of the information in this case was in violation of a protective order. And protective orders do not violate the First Amendment. *See United States v. Aguilar*, 515 U.S. 593, 606 (1995).

Defendants argue that the speech is protected because its content is true. But the truth of the speech does not alleviate the criminal nature of its dissemination. Indeed, the truth of the speech contains its power to harm. "Outing" a cooperator to a particular audience with the intent that the cooperator be harmed by that audience is certainly criminal. *See Hilliard*, 2024 WL 3634201, at \*3. Moreover, Defendants' analogy to newspapers is entirely inapposite. Defendants are not members of the press, and newspapers generally do not publish information with the intent to retaliate against government cooperators. To the extent Defendants argue that

7

publicizing cooperation with the government is intended to celebrate the honor associated with cooperation, Defendants can make that argument to the jury.

## III.    Concrete Injury

Defendants argue that the word "harmful," as used in § 1513, "should be limited to concrete, objective detriments of the same kind—loss of job, demotion, economic deprivation, or similarly verifiable injuries—not mere exposure, stigma, or subjective emotional distress from truthful publication." R. 84 at 3. According to Defendants, had "Congress wanted to punish harm beyond the physical or economic, it could have done so." *Id.* at 4.

The statute, however, is clearly not limited to the enumerated examples of harm in subsections (b) and (e), because Congress expressly criminalized "*any* action harmful to any person" who is a witness or cooperator. *See* § 1513(e) (emphasis added). Defendants attempt to distinguish the Second Circuit's decision in *Hilliard* and contend that the "harm" at issue in that case "was not merely outing the cooperators, but also 'punishing [them] with violence.'" R. 84 at 8 (quoting *Hilliard*, 2024 WL 3634201, at *3). But the quotation regarding "punishment" from *Hilliard* was not reference the defendants' alleged action, but rather a reference to what the defendants knew would be the consequence of publicizing the victim's cooperation to a certain street gang. In other words, in referencing "punishment," the court was noting what the defendants knew would happen to the cooperators if the information was publicized, not what actually occurred. Precisely the same description characterizes the allegations in this case. And contrary to Defendants' attempt to

8

distinguish the Second Circuit's holding, the facts of *Hilliard* are remarkably similar to the conduct alleged here. So while *Hilliard* is not binding on this Court, it is significantly persuasive authority.

At bottom, there is simply nothing in the statute or any other principle of law limiting the criminalization of "any action" to any particular kind of harm, "concrete" or otherwise, when the statute also requires that the criminal action be taken with knowing retaliatory intent. For that reason, the Court rejects Defendants' argument that the harm alleged in this case is insufficiently "concrete."

## IV.    Bill of Particulars

Defendants seek a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). Defendants argue that "given the practically unlimited reach of § 1513(e), the vague manner in which it is drafted, and the limited information provided in the indictment, a narrow bill of particulars is necessary so as to permit [Defendants] to be adequately apprised of the scope of the government's allegations." R. 68 at 11.

As discussed, the Court rejects Defendants' arguments that the statute is vague, overbroad, and lacks a "concrete" definition of the harm at issue. The Court's findings on these arguments were based in large part on the government's elucidation in its opposition brief of the harm at issue in this case. Defendants acknowledge that this statement from the government is largely the information that they are seeking from a bill of particulars.

9

Further, during oral argument on these motions, the government represented that it would propose a jury instruction regarding the statutory phrase "action harmful." This proposed jury instruction will provide Defendants sufficient advance notice of what the government intends to argue and to ask the jury to find with regard to the phrase "actional harmful." The Court accelerated the deadline for a proposed jury instruction to July 20, 2026, to provide Defendants with sufficient time to prepare ahead of the trial scheduled to begin August 24, 2026. To the extent Defendants believe that the government's proposed instruction provides insufficient notice of the allegations, Defendants can renew their motion for a bill of particulars at that time, or otherwise litigate the proper instruction.

### Conclusion

For these reasons, Defendants' motions to dismiss [67] [84] are denied and Defendants' motion for a bill of particulars [68] is denied. Richard's motion to compel [82] is denied as moot because defense counsel reported at the oral argument hearing on June 24, 2026, that the dispute had been resolved. Richard's motion for discovery [69] is denied because the Court's decision to accelerate the date for motions in limine, exhibit and witness lists, and the requirement for a proposed instruction regarding the phrase "action harmful," is sufficient to address Richard's asserted need for more information about what statements she made that the government intends to present to the jury. As stated at the oral argument hearing, motions in limine, exhibit and witness lists, and the government's proposed instruction regarding the phrase "action harmful," are due 7/20/2026. Responses to motions in limine are due 7/29/2026.

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated:  July 7, 2026

11