UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DIONTAE HARPER;<br>MARKEEVES BROOKS;<br>DONNITA BRYANT; and<br>MICHAELA RICHARD. | No. 25 CR 615<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

The Government has submitted a *Santiago* proffer seeking the preliminary admission of statements at trial pursuant to Federal Rule of Evidence 801(d)(2)(E). R. 113. Defendants Markeeves Brooks, Donnita Bryant, and Michaela Richard (collectively, "Defendants") filed a response in opposition.[1] R. 127. For the following reasons, the Court conditionally admits the statements described in the Government's *Santiago* proffer and reserves ruling on other statements sought to be admitted as coconspirator statements.

### Legal Standard

Under Federal Rule of Evidence 801(d)(2)(E), a "statement" is not hearsay if it "is offered against a party" and "was made by the party's coconspirator during and in furtherance of the conspiracy." It is well-settled Seventh Circuit law that a district court may admit coconspirator statements conditionally based on the government's

[1] On August 17, 2026, defendant Diontae Harper pled guilty.

pretrial proffer, known as a "*Santiago* proffer." *United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016) (citing *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), overruled in part on other grounds by *Bourjaily v. United States*, 483 U.S. 171, 176–81 (1987)). Coconspirator statements are admissible if the Court finds by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant and the person making the statement were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *United States v. Quiroz*, 874 F.3d 562, 566 (7th Cir. 2017) (citations omitted).

As to the first element, the government must establish that there was a conspiracy for an illegal purpose, or for a legal purpose using illegal means. *See United States v. Gil*, 604 F.2d 546, 549–50 (7th Cir. 1979). And as to the second, the government must show that Defendants "(1) knew of the conspiracy and (2) intended to associate [themselves] with the criminal scheme." *United States v. Stephenson*, 53 F.3d 836, 843 (7th Cir. 1995) (citation omitted). In determining both the existence of a conspiracy and a defendant's participation in it, the Court can consider the statements sought to be admitted. *Bourjaily*, 483 U.S. at 176–81. But the contents of the proffered statements alone are not sufficient to establish these factors; there must also be corroborating evidence independent of the statements themselves. *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009). Such evidence may be either direct or circumstantial. *United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010).

As to the third element of whether a statement was made "in furtherance" of the conspiracy, courts evaluate the statement in the context in which it was made and look for a "reasonable basis" on which to conclude that the statement furthered the conspiracy. *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010). Generally, a statement that is "part of the information flow between conspirators intended to help each perform his role" satisfies the "in furtherance" requirement. *United States v. Alviar*, 573 F.3d 526, 545 (7th Cir. 2009). In addition, a statement to conceal a conspiracy where ongoing concealment is a purpose of the conspiracy is a statement "in furtherance" of the conspiracy. *United States v. Gajo*, 290 F.3d 922, 928–29 (7th Cir. 2002).

In all, there is a "relatively low burden of proof" on the admissibility of coconspirator statements. *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). If the Court determines the statements are admissible, the jury may consider them for any purpose. *United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991). Any statement made by a coconspirator during and in furtherance of the conspiracy is admissible against all coconspirators. *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996).

However, admission of the statements pursuant to a *Santiago* proffer is conditional. *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999). The *Santiago* procedure requires the government to "close the evidentiary loop at trial." *Davis*, 845 F.3d at 286. "If at the close of its case the prosecution has not met its

burden to show that the statements are admissible, the defendant[s] can move for a mistrial or have the statements stricken." *Haynie*, 179 F.3d at 1050.

**Analysis**

Here, the Government proffered a detailed "preview" of the evidence of conspiracy as to all Defendants. *See Alviar*, 573 F.3d at 540. In addition to identifying categories of statements it seeks to admit under Rule 801(d)(2)(E) and examples of specific statements, the Government also included alternative bases for admission. The proffer does not include every statement that the Government seeks to admit under Rule 801(d)(2)(E), nor does it have to. *United States v. McClellan*, 165 F.3d 535, 553 (7th Cir. 1999).

At the outset, many of the statements the Government seeks to admit are admissible as statements by a party opponent under Rule 801(d)(2)(A). Still, the distinction between admitting a statement under the coconspirator exception and under the party admission exception is a meaningful one. Under the former, a statement can be considered against all Defendants, while under the latter it may only be considered against the defendant who made it. And since many of the statements are admissions, they serve as independent evidence, coupled with coconspirator statements themselves, to support conditional admission.

The Government's *Santiago* proffer satisfies its burden. First, the proffered evidence shows, by a preponderance, a conspiracy to retaliate against Victim A and Victim B for cooperating with law enforcement. The Government's proffer details that conspirators: (1) made threatening statements towards Victims A and B, who had provided information against Harper in a murder case and were providing additional

information in an ongoing investigation into Harper and members of his family and street gang; (2) plotted to and successfully publicly disseminated a recorded interview by Victim A; and (3) discussed publicizing a grand jury statement sworn by Victim B.

Second, the Government demonstrated, by a preponderance, that Defendants associated themselves with the conspiracy and its criminal purpose. The proffered evidence illustrates extensive phone calls, text messages, emails, social media posts, and physical evidence indicating the Defendants' participation in the retaliatory scheme, including conversations via various mediums about publicizing a video of Victim A and a statement of Victim B, exchanging discs with a video of Victim A, and ultimately sharing that video with social media accounts.

Third, the Government showed, by a preponderance, that the statements by Defendants and Harper, a coconspirator, were made in furtherance of this conspiracy. The statements reflect the declarants' efforts to advance the previously described conspiracy to retaliate.

Defendants' various arguments to the contrary are unavailing. To begin, Defendants argue that no conspiracy existed prior to June 9, 2025, and therefore any statements made prior to that date cannot be admitted as coconspirator statements. However, the Government has made a preliminary offer of evidence that the conspiracy began on January 2, 2025, when Harper and Brooks began pejoratively discussing Victims A and B cooperating in a previous case. This lengthy conversation involving threatening language can reasonably be seen as an agreement to retaliate against Victims A and B. *See United States v. Redwine*, 715 F.2d 315, 320 (7th Cir.

1983) ("The government need not establish that there existed a formal agreement to conspire; circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct may serve as proof."). Therefore, proffered statements made during and after that date were while the conspiracy was in progress. *See Gajo*, 290 F.3d at 926 ("To justify admission of coconspirator statements under FRE 801(d)(2)(E), the government must present evidence that a conspiracy was in progress at the time of the conversation . . . .").

Further, a co-conspirator's statement "is admissible against conspirators who join the conspiracy after the statement is made." *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990). Thus, once Bryant and Richard joined the conspiracy, all prior coconspirator statements are still admissible against them.

The Defendants argue that many of the statements prior to June 9, 2025 are evidence of an agreement among the Defendants to clear Harper's name, and are not evidence of an agreement to retaliate against Victims A and B. Those two different intentions, however, are not mutually exclusive. Even if Defendants intended to clear Harper's name, it is possible that retaliation against Victims A and B was long a substantial motivating factor. "As long as there is sufficient evidence from which the jury can infer that retaliation was a substantial motivating factor behind the [crime], it does not matter that the defendants may have had other motives." *United States v. Vega Molina*, 407 F.3d 511, 529–30 (1st Cir. 2005) ("[T]here is nothing in section 1513 that requires retaliation to be the sole motive for a [crime]."); *see also United States*

*v. Smalls*, 752 F.3d 1227, 1248 (10th Cir. 2014) (affirming a conviction for conspiracy to retaliate where the victim's cooperation with the government "was a substantial motive in the murder"). Therefore, the proffered coconspirator statements made prior to June 9, 2025 are conditionally admissible.

Defendants next contend that certain statements made after June 9, 2025, were not in furtherance of the conspiracy. Defendants argue that "subjective complaints" "[e]xpressing disappointment" that the videos posted online did not have their intended consequence were not made in furtherance of the conspiracy because they occurred after the conspiratorial acts had concluded. The Defendants point to numerous statements made on September 11, 2025, including Bryant's text messages to Brooks that "the clip that was leaked is irrelevant that's not even the right part that should've been leaked so basically I feel it was a waste of time," R. 127 at p. 11, and Richard texting Bryant "they stupid because that's the wrong part man . . . I knew it was [Brooks] . . . [Harper] got it baby he put his life in that man hands and that man ain't even come to court." *Id.* at 12. Contrary to Defendants' arguments, complaints about the efficacy of the already-disseminated videos are not simply retrospective observations. Rather, they reasonably indicate that Defendants have not achieved their desired outcome and further action may be taken. The Government has satisfied its burden even if the statement is susceptible to alternative interpretations, so long as "some reasonable basis exists for concluding that the statement furthered the conspiracy." *Cruz-Rea*, 626 F.3d at 937. Here, that basis exists. Indeed, Brooks responded that they would "keep leaking videos," and

compared it to "a new movie snippet but the actual movie don't come out until 2/3 months from when they release the snippet it's gone keep folks at the edge of they chairs." R. 113 at p. 25.

Defendants additionally point to a text message from Bryant to Brooks on September 12, 2025 that expresses "fear of legal exposure" as not in furtherance of the conspiracy because it was "motivated by self-protective concern rather than a desire to advance the scheme": "nobody supposed to have it from my understanding. [Harper] could get charged again even doing this so I really hope y'all know what y'all doing," and asked Brooks not to "send it to nobody." R. 127 at p. 13. But statements made to conceal the conspiracy are still considered to be in furtherance of it. *United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000) ("Statements made in furtherance of a conspiracy . . . include comments designed . . . to control damage to or detection of the conspiracy [or] to hide the criminal objectives of the conspiracy . . . .").

Defendants next contend that communications between Harper and Bryant about monetary payments are collateral to and not in furtherance of the alleged scheme. Defendants refer to a phone exchange between Harper and Bryant on September 12, 2025, in which Harper stated he received "$500" for the posted clip and that Bryant would receive "$100 of that amount." *See* R. 127 at p. 13. According to Defendants, this "family financial transaction" was incidental to but not in furtherance of the alleged conspiracy. But the crux of the conspiracy is the dissemination of the video. Harper's and Bryant's statements discussing coordinated efforts to leak the video and receive profit are manifestly in furtherance of the

conspiracy. *See Cruz-Rea*, 626 F.3d at 937 (explaining that the "coconspirator's statement need not have been made exclusively, or even primarily, to further the conspiracy" in order to be admissible under the coconspirator exception (quotations and citations omitted)).

Another statement considered collateral by the Defendants occurred on September 12, 2025, when Harper emailed Richard urging her to obtain the rest of the Cooperator A Interview because he "was not going to rest until 'my point proved on Douwey,'" referring to a personal gang oath referencing his deceased brother. R. 127 at p. 14. According to the Defendants, this is "a personal, emotional expression of vindication and loyalty to a deceased family member . . . rather than a statement conducting the business of the conspiracy or coordinating a coconspirator's role." *Id.* Defendants' argument is unpersuasive. This email exchange details two coconspirators discussing the very basis of the charges in this case: continuing to obtain information about Victim A in order to publicize it as a means of retaliation.

Last, Defendants argue that testimony from Victim A should not be admitted under the coconspirator exception because Victim A is not a coconspirator. But Victim A will be testifying about statements made to him by Harper, a coconspirator, on February 5, 2025. Those statements were further memorialized in phone calls made by Harper that same day. The statements made by Harper are clearly within the bounds of admissible coconspirator statements. Statements need not be made from one coconspirator to another; they are admissible so long as the declarant is a coconspirator of the party against whom the statement is offered. *See* FRE

801(d)(2)(E). And any statement made by a coconspirator during and in furtherance of the conspiracy is admissible against all coconspirators, even those who join the conspiracy after the statement is made. *See Lindemann*, 85 F.3d at 1238; *Sophie*, 900 F.2d at 1074. To the extent the Government is offering other statements by Victim A, they are not coconspirator statements.

**Conclusion**

For the foregoing reasons, the Court conditionally admits the statements described in the Government's *Santiago* proffer.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: August 25, 2026